# MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



ATTORNEY FOR APPELLANT

John Quirk
Muncie, Indiana

IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Je.M., and Jo.M., <br> *Appellants-Petitioners,* <br><br> v. <br><br> D.A., <br> *Appellee-Respondent* | July 27, 2018 <br><br> Court of Appeals Case No. <br> 17A-AD-3042 <br><br> Appeal from the Delaware Circuit Court <br><br> The Honorable Marianne Vorhees, Judge <br><br> Trial Court Cause No. <br> 18C01-1706-AD-53 |

**May, Judge.**

[1] Je.M. ("Paternal Grandfather") and Jo.M. ("Paternal Grandmother") (collectively, "Paternal Grandparents") appeal the denial of their petition to adopt their grandson, Z.M. ("Child"). Paternal Grandparents argue the trial court erred when it determined the consent of D.A. ("Mother") was required for Paternal Grandparents' adoption of Child. Finding no error, we affirm.

## Facts and Procedural History[1]

[2] Child was born on October 15, 2012, to Mother and B.M. ("Father"). On April 15, 2016, the Randolph Circuit Court ordered Father to have physical custody of Child, and Mother was given supervised visitation ("Randolph County Action"). Mother was also ordered to pay Father $40.00 per week in child support. On July 13, 2015, Father filed a petition to suspend Mother's visitation. On July 15, 2015, Mother filed a petition for citation related to parenting time. The trial court held a hearing on August 18, 2015, and ordered Mother to have parenting time as the parties agreed in the future.

[3] In June 2017, Father moved to Texas. On June 2, 2017, Paternal Grandparents filed a petition in Delaware County to adopt Child. With the petition, Paternal Grandparents filed Father's consent to the adoption and the termination of his

---

[1] We note Appellants' Statement of the Case does not comport with Indiana Appellate Rule 46(A)(5), which requires the Statement of the Case "briefly discuss the nature of the case, the course of the proceedings relevant to the issues presented for review, and the disposition of these issues by the trial court[.] . . . *Page references to the Record on Appeal or Appendix are required* in accordance with Rule 22(C)." (emphasis added) The Appellants' brief contains a list of events relevant to the proceedings, with no indication of how these events connect to other events in the proceedings, and there are no page citations.

parental rights. On June 21, 2017, Mother filed a petition for emergency custody as part of the Randolph County Action. Paternal Grandparents filed a motion to intervene in the Randolph County Action, and the trial court approved that motion. Paternal Grandparents filed a petition to modify custody. Mother did not appear at the hearing on her petition for emergency custody, and Paternal Grandparents were granted temporary custody of Child.[2]

[4] On June 27, 2017, the trial court held a pre-trial hearing during which Mother indicated she intended to hire counsel. Her counsel entered an appearance on July 27, 2017. On November 9, 2017, the trial court held a status hearing during which Father appeared telephonically and answered questions regarding his consent to the adoption and the termination of his parental rights. On December 7, 2017, the trial court held a final hearing on Child's adoption, during which Mother testified. On December 18, 2017, the trial court denied Paternal Grandparents' petition for adoption.

# Discussion and Decision

[5] As an initial matter, we note Mother did not file an appellee's brief. When an appellee does not submit a brief, we do not undertake the burden of developing arguments for that party. *Thurman v. Thurman*, 777 N.E.2d 41, 42 (Ind. Ct.

---

[2] At some point in the proceedings, the Randolph County Action was transferred to Delaware County. (*See* App. Vol. II at 66) ("This court now has jurisdiction over a related case, Cause No. 18C01-1711-JP-0266, the Paternity Action which started in Randolph Circuit Court under Cause No. 68C01-1408-JP-0136.").

App. 2002). Instead, we apply a less stringent standard of review and may reverse if the appellant establishes *prima facie* error. *Id. Prima facie* error is "error at first sight, on first appearance, or on the face of it." *Van Wieren v. Van Wieren*, 858 N.E.2d 216, 221 (Ind. Ct. App. 2006).

[6]     Our standard of review of adoption proceedings is well-settled:

> "When reviewing adoption proceedings, we presume that the trial court's decision is correct, and the appellant bears the burden of rebutting this presumption." We generally give considerable deference to the trial court's decision in family law matters, because we recognize that the trial judge is in the best position to judge the facts, determine witness credibility, "get a feel for the family dynamics," and "get a sense of the parents and their relationship with their children." We will not disturb the trial court's ruling "unless the evidence leads to but one conclusion and the trial judge reached an opposite conclusion." The trial court's findings and judgment will be set aside only if they are clearly erroneous. "A judgment is clearly erroneous when there is no evidence supporting the findings or the findings fail to support the judgment." "We will neither reweigh the evidence nor assess the credibility of witnesses, and we will examine only the evidence most favorable to the trial court's decision."

*In re Adoption of O.R.*, 16 N.E.3d 965, 972-73 (Ind. 2014) (citations omitted). Paternal Grandparents do not challenge the findings of the trial court, so we must accept them as true. *See Madlem v. Arko*, 592 N.E.2d 686, 687 (Ind. 1992) ("Because Madlem does not challenge the findings of the trial court, they must be accepted as correct.").

[7] Generally, a trial court may grant a petition for adoption only if both the mother and father of the child consent. Ind. Code § 31-19-9-1(a)(2). However, Ind. Code § 31-19-9-8 provides consent to an adoption is not required from:

> (1) A parent or parents if the child is adjudged to have been abandoned or deserted for at least six (6) months immediately preceding the date of the filing of the petition for adoption.

> (2) A parent of a child in the custody of another person if for a period of at least one (1) year the parent:

>> (A) fails without justifiable cause to communicate significantly with the child when able to do so; or

>> (B) knowingly fails to provide for the care and support of the child when able to do so as required by law or judicial decree.

[8] In the underlying proceedings, Paternal Grandparents argued Mother's consent was not required because she had not communicated with Child since May 2016 and she owed Father $4,560.00 in child support arrears. Parental Grandparents assert "the Trial Court found that the parents ([Mother and Father]) were too young when [Child] was born. Because of this, the Petition to Adoption without consent of [Mother] was denied." (Br. of Appellants at 8.) We disagree.

[9] Regarding Mother's consent, the trial court found:

> 9. First, regarding consent: [Child] lived with [Father] and [Father's] girlfriend, [G.M.,] during the One (1) Year period

prior to the date [Paternal Grandparents] filed the Petition for Adoption. [Father] testified he was the primary caregiver for [Child] during that time period. [Father] had to get up early for work, and so he took [Child] to [Paternal Grandparents'] house at night to sleep. [Father] testified he would e-mail [Mother] until the Randolph Circuit Court suspended her parenting time.[3]

10. [G.M.] testified that she and [Father] lived together from July 2016, until March, 2017, and during that time period, [Mother] contacted [G.M.] via Facebook to express concerns about [Child].

11. [Mother] testified the contact with [G.M.] occurred at Mother's Day, 2016, and she told [G.M.] that she wanted to see [Child]. [Mother] had one visit with [Child] in May, 2016. She tried again to visit [Child] at Christmas, 2016, by contacting [G.M.]. She did not receive a visit.

12. I cannot go so far as to say that [Paternal Grandparents] have carried their burden to show by clear and convincing evidence that [Mother] has abandoned or deserted [Child], or that she failed to communicate significantly with him without justifiable cause.

13. During the time period at issue, June 2016 to June 2017, [Father] had primary custody and relied on [Paternal Grandparents] for overnight care. [Mother] had an order allowing her to have supervised parenting time with [Child], but [Father] testified he stopped communicating with [Mother] by e-mail. [Mother] did have two visits between May and December,

---

[3] It is unclear when this suspension occurred, but it seems to have been ordered prior to the adoption proceedings.

2016.  She attempted to contact [Father] through his girlfriend's Facebook page.

14.  Although [Mother] certainly could have made more diligent efforts to contact [Father] to obtain parenting time, she did not completely abandon her child.  She even sought emergency custody after she heard that [Father] had moved to Texas.

15.  As for support, [Mother's] obligation was to pay support to [Father] for [Child's] benefit.  She had no support obligation to [Parental Grandparents] between June 2016 and June 2017.  [Father] did not enforce the support order.  [Mother] owed no duty to pay support to [Parental Grandparents] during the period from June 2016 to June 2017.  Further, the parties did not present any evidence as to [Mother]'s ability to pay support during the time period.  I do not find this as a basis for terminating [Mother's] parental rights.

* * * * *

18.  As to [Mother's] role in [Child's] life, it seems to me from reading the records from both proceedings that [Father and Mother] had [Child] at a very young age.  But the child is young, and [Mother] is young, and so to terminate [Mother's] rights as mother at this time is premature.

(App. Vol. II at 67-8.)

Paternal Grandparents mischaracterize the record by suggesting the reason for the denial of their petition was the trial court's conclusion that Mother was young when Child was born.  Instead, the trial court set forth multiple findings to support its conclusion Mother's consent was required for Child's adoption.

While it does seem contact between Mother and Child was limited and Mother could have put forth more effort to communicate with Child, the Record also supports an inference that the lack of contact was not solely Mother's fault. Mother, and Father, and G.M. testified Father did not respond to Mother's emails, Father testified he did not know his own email address. G.M. testified Father "did not check his emails at all[,]" (Tr. Vol. II at 52), and Paternal Grandmother checked the email address and responded to emails sent to that account. Paternal Grandmother admitted she had access to the email account in question.

[11] Father indicated he did not know if Mother had his phone number and he admitted Mother did not know where he lived. Mother testified Father had blocked her from communicating with him via Facebook and Paternal Grandparents had a "no trespassing" order against her. (*Id.* at 76.) Mother testified she attempted to set up supervised visitation with Child through the Department of Child Services, but moved and she did not maintain contact to make arrangements.

[12] While we acknowledge the complicated nature of Mother's relationship with Child, we cannot say the trial court erred when it denied Paternal Grandparents' petition to adopt Child, especially in light of testimony indicating some parties may have intentionally thwarted Mother's efforts to contact Child. *See E.B.F. v. D.F.*, 93 N.E.3d 759, 767 (Ind. 2018) (trial court's grant of stepmother's petition to adopt child reversed based, in part, on the fact

father and stepmother intentionally and unintentionally thwarted mother's efforts to communicate with child).

# Conclusion

[13] The trial court did not err when it denied Paternal Grandparents' petition for adoption of Child because Mother's consent was required for Child's adoption. Accordingly, we affirm.

[14] Affirmed.

Riley, J., and Mathias, J., concur.